## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-20141-CR-KING

UNITED STATES OF AMERICA

vs.

VICTOR ROJAS,

     **Defendant.**

_____/

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### OBJECTIONS TO PRESENCE INVESTIGATION REPORT

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response to Defendant's Objections to Presentence Investigation Report seeking a greater role reduction.

This case involves three brothers, Ruben Rojas Bascope, Victor Rojas, and Juan Rojas working in concert to launder $2,750,671 USD for drug traffickers.   The unfortunate problem for them is that they laundered this money through a DEA confidential source (CS).

The CS brokered nine (9) separate money laundering contracts with Ruben Rojas Bascope between 2015 and 2016.   Once the contract amount and commission were established, the CS sent law enforcement to pick up the bulk cash from money couriers in South Florida or Amsterdam, Netherlands.   DEA obtained the assistance of Dutch law enforcement as part of the investigation. After each pick-up, the CS would then receive instructions from Ruben Rojas Bascope on wiring the money to certain corporate and personal accounts in the U.S. banking system to conceal their source or ownership.   *See* Paragraph 12 of the PSI.   As part of the concealment of the money, it was broken up and sent to multiple individuals and entities who then wired it to further shell accounts in the United States or abroad.   These individuals included Ruben Rojas Bascope's

younger brothers, Victor Rojas (this defendant) and Juan Rojas (the co-defendant).   The two defendants were indispensable to the money laundering conspiracy.

For example, on January 25, 2016, in a controlled meeting, co-defendant Juan Rojas delivered approximately $501,006 USD in suspected drug trafficking proceeds to a DEA undercover agent in a Fuddrucker's parking lot in Pembroke Pines, Florida.   DEA kept $25,051 as commission for the money laundering contract.   Ruben Rojas Bascope directed the CS to wire the remainder of the money to different accounts.   Most of that money went to Victor Rojas.   In 2016, he received 4 wires of $100,000 ($400,000 USD) into two of his personal bank accounts in New York.

As part of their plea agreements, the Government agreed that both Juan and Victor Rojas were entitled to a 2-level role reduction based on their role as compared to Ruben Rojas Bascope. However, Victor Rojas should not receive a 3-level or 4-level reduction as a minor or minimal participant.   Analyzing the 3B1.2 factors, Defendant cannot establish that he is "plainly among the least culpable of those involved in the conduct" of this group because he is more culpable than his other co-conspirator Juan Rojas.   *See* U.S.S.G. Section 3B1.2 Application Note 4.

**The degree to which the defendant understood the scope and structure of the criminal activity:**[1]   The Government believes that Victor Rojas understood more about the criminal activity than Juan Rojas. Victor Rojas confessed post-*Miranda* to understanding during the criminal conspiracy that the money he was sending was in fact from drug trafficking. This was, in part, due to the fact that Victor Rojas was confronted with evidence obtained in a separate federal investigation in New York.[2]

---

1 *See* U.S.S.G. Section 3B1.2 Application Note 3(C)(i).
2 The Southern District of New York returned charges involving money laundering and cocaine trafficking from 2017 to 2019 against Victor Rojas.   *See* Dkt. No.: 1:19-00091-Cr-DLC.   The

In contrast, Juan Rojas did not agree to knowing the money he transported or wired was from drug trafficking.   Comparing the post-*Miranda* statements of both defendants and the evidence obtained against each of them, the Government believes that Victor Rojas is more culpable.

**Nature and extent of the defendant's participation in the commission of the criminal activity:**[3]   Victor Rojas moved more money as part of the scheme.   Victor Rojas actually controlled $1,733,016 USD in criminal proceeds.   Juan Rojas only controlled $1,316,221 USD (totaling the $881,071 USD that he picked up and the $435,150 USD that he wired).[4]   Defense states that Victor Rojas did not ever have physical control over the money like Juan Rojas, who served as a money courier.   Nevertheless, Victor Rojas *did* have control over $1.7 million USD in criminal proceeds in his bank account, regardless of whether the money was in an electronic form rather than in cash.   At one point, Ruben Rojas Bascope even told the CS that one bank account that Victor Rojas was using for the crime was shut down by the particular bank for suspicious activity.

In addition, Victor Rojas had direct communication with the DEA confidential source (CS) in this case when the CS could not reach Ruben Dario Rojas Bascope.   This communication consisted of limited Whats App communications between 2015 and 2016 to coordinate and follow up on the wiring of the money as part of the money laundering scheme.[5]

---

Court should not consider that separate alleged crime in deciding the Defendant's objection to the PSI, nor does it need to do so.   Defendant is plainly not entitled to a greater role reduction.
3 *See* U.S.S.G. Section 3B1.2 Application Note 3(C)(iv).
4 Defense claims Juan Rojas' role as money courier makes him more culpable than Victor Rojas. Based on law enforcement training and experience, the case agent could testify that the actual money courier in the street in a money laundering scheme usually has the least decision-making authority.   They are also usually taking the most risk for the least reward.
5 The transcription of these messages has been produced in discovery.   *See* 20141-982-20141-987.   The transcription and a summary translation can be provided to the Court under seal to

**The degree to which the defendant stood to benefit from the criminal activity**[6]**:** Based on their post-arrest statements, the Government suspects Victor Rojas took less risk but got paid equal to or more than Juan Rojas (because he transported more money).   Both men claim that they only got paid a small % of the money that they moved.   Based on Victor's post-*Miranda* claiming he received $1,000 for every $100,000 that he transported, that means he only made $17,330 for his continuous involvement in this conspiracy from 2015 to 2016.   Regardless of the plausibility of that assertion, he should not receive a greater role reduction.   The Defendant's objections should be overruled.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   */s/ Timothy J. Abraham*
Timothy J. Abraham
Assistant United States Attorney
Florida Bar No. 114372
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9438
Fax: (305) 536-4699
Timothy.Abraham2@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 17, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

*/s/ Timothy J. Abraham*
Timothy J. Abraham

---

protect the CS.
6 *See* U.S.S.G. Section 3B1.2 Application Note 3(C)(v).

4